IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

JOSEY DALE GUARDIPEE,

Defendant.

CR 26-53-BLG-KSL-1

MEMORANDUM OPINION AND ORDER

Defendant Josey Dale Guardipee is charged with three firearm offenses under 18 U.S.C. §922. She moves to suppress evidence found after she was stopped by police as well as statements made during the stop. (Doc. 27). Arguing that this evidence would be all the evidence against her, she also moves to dismiss the indictment. (*Id.*; Doc. 28 at 17). The stop and arrest were lawful, the search of the bag was a valid search incident to arrest, and Guardipee validly waived her Miranda rights before making voluntary statements. The Court denies both motions.

## I. Background

On October 7, 2025, the Yellowstone County District Court issued a warrant for Guardipee's arrest. (Doc. 29-1). About a month and a half later, a confidential informant informed the police that Guardipee was with a man named "D'Angelo"

and that D'Angelo had a firearm and drugs. (Doc. 28-1 at 5). The next day, a truck fled from Officer Hallam after being stopped for speeding. (*Id.*) Based on a conversation with the vehicle's owner, Officer Hallam believed that Guardipee was likely the driver. (*Id.*) Officer Hallam located the now empty truck and waited nearby. (*Id.*) As he waited, he saw a man and a woman approach. (*Id.*) The man was never identified. The pair soon disappeared from view and Officer Hallam believed that the man saw him. (*Id.*)

After a brief search, Officer Hallam found the pair and activated his lights. (*Id.*) The man fled, and Guardipee later said that she did not know him. (*Id.*; Ex. 504 at 17:33:24-26; 35:58-59). Guardipee did not flee on foot, and Officer Hallam saw she was holding a bag. (*Id.*; Ex. 504 at 17:33:36). Officer Hallam almost immediately identified her as "Josey" from a picture he had seen and put her in handcuffs. (*Id.*; Ex. 504 at 17:34:13-38). Guardipee asked, "what is this for?" to which Officer Hallam replied, "you ran from me." (Ex. 504 at 17:34:09-17).

A few moments later, Officer Hallam issued a Miranda warning. (Ex. 504 at 17:34:26-41). He asked why Guardipee ran and then said, "you understand your rights, right" as he loosened her handcuffs. (*Id.* at 17:35:12-17). The bodycam audio does not clearly capture her response to either question. (*Id.* at 17:35:18, 21-22). Officer Hallam's report states that Guardipee said she understood her rights and that

she ran because she had a warrant. (Doc. 28-1 at 5). Officer Hallam informed her she was under arrest and searched her person because he did not "want to get stuck with anything." (Ex. 504 at 17:35:30-32). Over the next fifteen minutes, Guardipee answered Officer Hallam's questions. (*Id.* at 17:35:21-50:35).

As Officer Hallam picked up her partially open bag, Guardipee admitted "there is a weapon in there" and "there is a gun in there," but she declined to give consent to search the bag. (*Id.* at 17:36:00-05, 15). She asserted that she was not a convicted felon. (*Id.* at 17:36:31-32). Officer Hallam opened the bag a little more to see the gun. (*Id.* at 17:36:33-35). Officer Hallam asked for and received consent to remove the gun and confirmed that she understood she could decline. (*Id.* at 17:36:37-50). While questioning Guardipee, Officer Hallam saw drugs in the bag. (*Id.* at 17:36:52-54). He then received consent to search the bag. (*Id.* at 17:36:57-37:04). He removed the gun about a minute later. (*Id.* at 17:38:00). Guardipee admitted that she thought the gun was stolen. (*Id.* at 17:37:29). Officer Hallam also discussed the outstanding warrant with her. (*Id.* at 17:40:19-48). He asked Guardipee, "I think you have what, a $10,000 warrant or something?" before asking what it was for. (*Id.* at 17:40:19-23). Approximately ten minutes later, Guardipee asked Officer Hallam what she was going to jail for, and he responded that—among other things—she was being arrested for her outstanding warrant. (*Id.* at 17:50:36-51:03).

As a result of the search, the government charged her with firearm offenses under 18 U.S.C. §§922(g)(3), (j), and (n). (Doc. 2).

## II. Standard of Review

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. To protect this freedom, the United States Supreme Court "conferred upon defendants in federal prosecutions the right, upon motion and proof, to have excluded from trial evidence which had been secured by means of an unlawful search and seizure." *Simmons v. United States*, 390 U.S. 377, 389 (1968). Federal Rule of Criminal Procedure 12(b)(3)(C) governs these motions to suppress evidence.

Searches conducted without a warrant are per se unreasonable under the Fourth Amendment, subject only to specifically established exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967). As long as the defendant shows that a warrantless search occurred, the government must show by a preponderance of the evidence that an exception to the warrant requirement applies. *United States v. Matlock*, 415 U.S. 164, 177 & n.14 (1974); *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). The government likewise bears the burden of proving by a preponderance of the evidence that a defendant validly waived her Miranda rights and that her

statements were voluntary. *Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986); *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

Separately, a defendant can move to dismiss the charges against her altogether. Rule 12(b)(1) allows dismissal of an indictment prior to trial when undisputed facts demonstrate that the government cannot prove an essential element of the charged offense with admissible evidence. *See United States v. Rojas-Pedroza*, 716 F.3d 1253, 1261 (9th Cir. 2013), *abrogated on other grounds by United States v. Portillo-Gonzalez*, 80 F.4th 910, 918 (9th Cir. 2023).

## III. Motion to Suppress

Guardipee first moves to suppress evidence found in her bag after she was stopped by police, arguing that law enforcement lacked reasonable suspicion to stop her and that she did not consent to the search of her bag. (Doc. 28 at 5-10, 14-17). She also moves to suppress statements she made during the stop, arguing that they were obtained in violation of the Fifth and Sixth Amendments. (*Id.* at 12-14). The Court addresses each in turn.

### A. Officer Hallam lawfully stopped Guardipee.

The parties first dispute whether Officer Hallam had reasonable suspicion to stop Guardipee. Guardipee does not contest the validity of her arrest. (Doc. 28 at 17). Instead, she argues that because Officer Hallam lacked reasonable suspicion to

stop her, everything that happened next is inadmissible. (*Id.* at 5). The government counters that Officer Hallam knew of Guardipee's outstanding warrant at the time of arrest, and that previous violations of the law gave Officer Hallam reasonable suspicion regardless. (Doc. 29 at 4-6).

**1. The arrest warrant enabled the stop.**

The outstanding warrant, which Guardipee never addresses, justified the stop because Officer Hallam knew of the warrant at the time of the stop. An arrest warrant alone establishes probable cause to stop and arrest a suspect, so the government does not need to show any further justification for the stop. *See Steagald v. United States*, 451 U.S. 204, 213 (1981). Here, the record evidence shows that Officer Hallam knew of the warrant when he stopped Guardipee. His report indicates that he arrested Guardipee for, among other things, "having a valid warrant." (Doc. 28-1 at 5). The bodycam video corroborates the report twice over. Approximately six minutes into the encounter, Officer Hallam raised the warrant on his own, asking Guardipee, "I think you have what, a $10,000 warrant or something?" (Ex. 504 at 17:40:19-23). And when Guardipee later asked what she was going to jail for, Officer Hallam told her that the warrant was one of several reasons. (*Id.* at 17:50:36-51:03). Those statements confirm that the warrant was a basis for the arrest, and Officer Hallam's "$10,000" remark also establishes when Officer Hallam learned of the warrant. This

amount had not come up in the conversation with Guardipee, and nothing in the record suggests that he received the information from someone else during the stop. The only reasonable inference is that Officer Hallam knew of the warrant, including the amount, before the stop. Because Officer Hallam knew that he was stopping a person with a valid arrest warrant, he did not need reasonable suspicion independent of it.

**2. In the alternative, Officer Hallam had at least reasonable suspicion to stop Guardipee.**

At a minimum, Officer Hallam had reasonable suspicion to stop Guardipee. An officer can stop a suspect without a warrant for brief investigation if they have reasonable suspicion that a crime "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The "standard is not a particularly high threshold to reach." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013). The "officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." *Terry*, 392 U.S. at 21. The government has the burden of producing facts which support suspicion of illegal activity. *Hawkins*, 249 F.3d at 872. Flight from police, speeding, and information from reliable informants can all provide reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000). (flight); *Whren v. United States*, 517 U.S. 806, 810 (1996)

(traffic violations); *United States v. Palos-Marquez*, 591 F.3d 1272, 1275 (9th Cir. 2010) (informants).

Here, the record shows that Officer Hallam had at least reasonable suspicion to stop Guardipee based on Guardipee's own conduct and the informant's tip. As an initial matter, Officer Hallam saw the truck flee from a traffic stop, (Doc. 28-1 at 5), which is a violation of Montana law. Mont. Code Ann. §61-8-316. This conduct was not merely suspicious but was itself criminal. *See Wardlow*, 528 U.S. at 124-25; *Whren*, 517 U.S. at 810. Based on a conversation with the vehicle's owner, Officer Hallam believed that Guardipee was borrowing the vehicle at the time of the failed traffic stop. (Doc. 28-1 at 5). And when Officer Hallam later encountered Guardipee, he recognized her from the picture he had seen. (*Id.*) Together, these gave the officer reason to believe she was the driver who fled. (*Id.*) In addition, a "reliable criminal informant" informed Officer Hallam that Guardipee was with someone who had a firearm and drugs, which further supported the officer's decision to stop Guardipee. *See Palos-Marquez*, 591 F.3d at 1275; (Doc. 28-1 at 5). Taken together, these facts gave Officer Hallam at least reasonable suspicion to stop Guardipee.

**B. Officer Hallam lawfully searched Guardipee's bag.**

Having concluded that the stop was valid, the Court next turns to whether the search of Guardipee's bag was lawful. Guardipee does not challenge the arrest itself,

and for the reasons discussed above, the arrest was supported by probable cause. Her challenge to the search rests on the contention that she did not validly consent to it. (Doc. 28 at 14-17). But the government defends the search as consensual and as a search incident to a lawful arrest. (Doc. 29 at 6-8). Because the Court concludes that the search was valid as a search incident to a lawful arrest, it need not reach consent.

A search incident to a lawful arrest is a "well-established exception to the Fourth Amendment's warrant requirement." *United States v. Cook*, 808 F.3d 1195, 1199 (9th Cir. 2015). Under this exception, officers executing a valid arrest can search the defendant's "person and the area within h[er] immediate control" during the arrest. *Chimel v. California*, 395 U.S. 752, 763 (1969) (cleaned up). This exception rests on two justifications: officer safety and the preservation of evidence. *Arizona v. Gant*, 556 U.S. 332, 338-39 (2009). These justifications spatially and temporally limit the search incident to a lawful arrest. The item searched must be within the defendant's immediate control, and the search must be "roughly contemporaneous with the arrest," such that no intervening event renders the search unreasonable. *Cook*, 808 F.3d at 1199; *see also United States v. Moorehead*, 57 F.3d 875, 878 (9th Cir. 1995); *United States v. Turner*, 926 F.2d 883, 888 (9th Cir. 1991). The fact that a defendant is handcuffed at the time of this search does not render the search invalid. *Cook*, 808 F.3d at 1199-1200.

First, Guardipee's bag was in her immediate control at the time of arrest because she was holding it. (Ex. 504 at 17:33:36). A bag in the defendant's hands at the moment of arrest is the best example of an item within her immediate control. For example, in *United States v. Nohara*, the Ninth Circuit upheld a search of a bag that the defendant was holding at the time of arrest because the bag was in his possession and control at the time of arrest. 3 F.3d 1239, 1243 (9th Cir. 1993). Here, Guardipee was likewise holding the bag at the time of arrest. This satisfies the initial spatial requirement. *Id.*; *see also Cook*, 808 F.3d at 1199.

Second, the events between the arrest and the search do not render the search unreasonable because the search occurred only minutes later, and both *Gant's* justifications were still present. Even if the defendant is physically restrained, a search is lawful if it is "roughly contemporaneous with the arrest." *Moorehead*, 57 F.3d at 878; *see also United States v. Caseres*, 533 F.3d 1064, 1073 (9th Cir. 2008) (collecting cases). For example, in *Nohara*, even though the defendant was handcuffed, the search of his bag was incident to arrest because it was made "within two to three minutes of his arrest." 3 F.3d at 1243. By contrast, in *United States v. Camou*, the defendant had been transported and processed before the officer conducted the search. 773 F.3d 932, 939 (9th Cir. 2014). There, the Ninth Circuit said the search was "not roughly contemporaneous" with the arrest. *Id.* Here, the search was

"roughly contemporaneous with" Guardipee's arrest. *Moorehead*, 57 F.3d at 878; *see also Nohara*, 3 F.3d at 1243. Within minutes of Officer Hallam placing Guardipee in handcuffs, he searched her bag. (Ex. 504 at 17:34:30-37:54). The search was therefore contemporaneous with the arrest.

The justifications for the search were still present at the time Officer Hallam searched Guardipee's bag. *Gant*, 556 U.S. at 338-39. Courts have held that where the defendant no longer poses a danger to officers or can no longer destroy evidence, the search incident to a lawful arrest exception does not apply. *Id.* at 339; *Cook*, 808 F.3d at 1199-1200. In *United States v. Maddox*, for example, the search was invalid because the defendant had been handcuffed and placed in the back of a patrol car. 614 F.3d 1046, 1048-49 (9th Cir. 2010). The Ninth Circuit determined that he was "incapable of either destroying evidence or presenting any threat to the arresting officer." *Id.* Likewise, in *Gant* itself, the defendant was handcuffed in a patrol car and "not within reaching distance" of the vehicle to be searched. 556 U.S. at 336, 344. There was no reasonable basis that the defendant or the other arrestees could access the vehicle. *Id.*

Here, before Officer Hallam opened the bag, Guardipee told him, "there is a weapon in there" and "there is a gun in there." (Ex. 504 at 17:36:00-05, 34). In addition, the man who had been walking with Guardipee had disappeared. (Doc. 28-1

at 5). And Officer Hallam was the only officer on the scene at the time of the search. (Ex. 504 at 17:37:56). A single officer arresting an individual holding a bag with a gun while an unidentified companion is somewhere nearby presents precisely the circumstances that justify a search incident to a lawful arrest. *See Gant*, 556 U.S. at 343-44; *see also Chimel*, 395 U.S. at 763. Unlike the defendant in *Maddox*, who was locked in a patrol car and could not reach a weapon or destroy evidence, Guardipee remained within arm's reach of the bag, and the firearm remained accessible to her companion if he returned. (Ex. 504 at 17:33:36-37:56).

The search of Guardipee's bag was a valid search incident to her arrest. Because that exception independently justified the search, the Court need not decide whether Guardipee validly consented to the removal of the firearm or to the subsequent search, or whether the drugs were in plain view once the bag was opened. The Court denies the motion to suppress evidence found in the bag.

**C. Guardipee's statements to Officer Hallam are admissible.**

The parties next dispute whether Guardipee's statements were "obtained in violation of her Fifth and Sixth Amendment rights." (Doc. 28 at 10). Specifically, the parties dispute whether Guardipee understood her rights and whether her statements to police were voluntary. (*Id.* at 12-14; Doc. 29 at 9-10). The parties also dispute whether the Sixth Amendment was applicable at the time of Guardipee's arrest.

(*Id.* at 17; Doc. 29 at 8). While Guardipee does not identify any statements that she seeks to suppress in particular, she made a number of admissions during her interview that are relevant to the charges she faces. (*Id.* at 10-14). Namely, she admitted that there was a gun in the bag, and that she believed that the gun was stolen. (Ex. 504 at 17:36:00-05, 37:29). The Court concludes that the statements are admissible.

The Fifth Amendment provides that a defendant cannot be compelled to be a witness against herself. U.S. Const. amend. V. Because police interrogation is inherently coercive, police must provide "Miranda warnings" before questioning. *United States v. Nieblas*, 115 F.3d 703, 705 (9th Cir. 1997); *Dickerson v. United States*, 530 U.S. 428, 435 (2000). These warnings include the right to remain silent and the right to an attorney. If the person being interrogated invokes either one of those rights, any questioning must cease. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010). If the person does not invoke those rights, and questioning continues, the government must show that the person waived her rights knowingly, intelligently, and voluntarily. *Id.* at 382. This waiver need not be express. *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir.), *amended*, 416 F.3d 939 (9th Cir. 2005). For example, a person who responds to the questions asked may waive their rights.

*Berghuis* shows how these steps fit together. There, the officers read the defendant his Miranda rights before questioning him. *Berghuis*, 560 U.S. at 374-75.

The defendant read one of the warnings out loud but declined to sign a form containing the warnings to demonstrate that he understood his rights. *Id.* at 375. He was "largely silent" as he was questioned for nearly three hours but then gave an incriminating statement. *Id.* at 375-76 (cleaned up). The Supreme Court held that his silence did not invoke his rights, that he understood the warnings because they were given and he was able to read them, and that his eventual statements were voluntary and amounted to a waiver of his rights. *Id.* at 382, 385-89.

Here, Guardipee's statements are admissible. Guardipee did not invoke her right to remain silent or her right to counsel under the Fifth Amendment, and by answering Officer Hallam's questions after receiving and understanding the Miranda warning, she knowingly and intelligently waived those rights, and her statements were voluntary. Because the Sixth Amendment right to counsel had not yet attached, her Sixth Amendment argument fails.

**1. Guardipee did not invoke her rights.**

Guardipee fails to point to any facts which would indicate she invoked her rights. If a defendant invokes their right to remain silent or their right to counsel, police questioning must stop immediately. *Michaels v. Davis*, 51 F.4th 904, 924 (9th Cir. 2022). To effectively invoke Miranda rights, arrestees must do so unequivocally. *Garcia v. Long*, 808 F.3d 771, 778 (9th Cir. 2015). Silence alone does not effectively

invoke the right to remain silent or the right to counsel. *Sessoms v. Grounds*, 776 F.3d 615, 624 (9th Cir. 2015) (right to remain silent); *United States v. Rodriguez-Arvizu*, 130 F.4th 1125, 1134 (9th Cir. 2025) (right to counsel). Answering questions without invoking the right to remain silent waives the right. *Berghuis*, 560 U.S. at 388-89.

Here, Guardipee did not unequivocally invoke her rights. She never said she wanted a lawyer or that she would not talk to police. Instead, Guardipee says she was silent in the face of questioning. Her silence is not sufficient to invoke her Fifth Amendment rights. *Berghuis*, 560 U.S. at 375, 382.

**2. Guardipee knowingly and intelligently waived her rights.**

Defendants must understand their rights before waiving them. *United States v. Garibay*, 143 F.3d 534, 540 (9th Cir. 1998). To effectively waive Miranda rights, defendants must understand the nature and consequences of waiver. *Benson v. Terhune*, 304 F.3d 874, 883 (9th Cir. 2002). But waiver of Miranda rights need not be express. It can be implied through silence, "coupled with an understanding of h[er] rights and a course of conduct indicating waiver." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

Here, Guardipee concedes she was provided with Miranda warnings, (Doc. 28 at 12), and the record shows she understood those rights and waived them. Officer

Hallam twice asked if Guardipee understood her rights. (Ex. 504 at 17:34:41; 35:15-17). While the parties dispute whether Guardipee affirmatively responded that she understood her rights, the record contains sufficient evidence that she understood them. She and Officer Hallam engaged in conversation, showing there was no language barrier, and the parties could understand each other. (*Id.* at 17:35:19-51:04). She was given an opportunity to tell Officer Hallam she did not understand her rights when he asked her twice whether she understood. (*Id.* at 17:34:41; 35:15-17). She then chose to speak and tell the officer that she had a firearm in her bag. (*Id.* at 17:36:00-05). In light of these circumstances, the Court concludes Guardipee understood her rights and knowingly waived them by offering statements to Officer Hallam.

**3. Guardipee's statements were voluntary.**

Guardipee next argues that her statements were involuntary. (Doc. 28 at 12-14). Compliance with *Miranda* generally results in admission of the defendant's statements, but the statements must still be voluntary. *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984). The voluntariness of a Miranda waiver and the voluntariness of the resulting statements are analyzed together because both turn on whether coercive police conduct overbore the defendant's will. *Connelly*, 479 U.S. at 169-70. The question is whether, under the totality of circumstances, the government

obtained the statement by "physical or psychological coercion or by improper inducement" such that "the [defendant]'s will was overborne." *United States v. Bautista*, 362 F.3d 584, 589 (9th Cir. 2004) (cleaned up). Courts consider a variety of factors including duration and location of questioning. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (duration); *Fikes v. Alabama*, 352 U.S. 191, 197 (1957) (location). Accusations of lying alone are not enough to render a statement involuntary. *United States v. Haswood*, 350 F.3d 1024, 1029 (9th Cir. 2003).

Here, the record shows that Guardipee's statements were voluntary. Officer Hallam advised her of her Miranda rights before asking any substantive questions. (Ex. 504 at 17:34:26-41). The bodycam footage shows that Officer Hallam engaged with Guardipee by answering her questions about why she was arrested and asking her questions about where she had been and who she was with. (*Id.* at 17:35:34-58). The questioning took place in the open and lasted only about fifteen minutes. (*Id.* at 17:35:19-50:35). He made no threats and offered no promises or inducements. She declined to consent to a search of her bag, and Officer Hallam honored that refusal, asking instead for permission only to remove the firearm. (*Id.* at 17:36:37-40). He again told her she could decline. (*Id.* at 17:36:43-49) The circumstances of the arrest, as well as Guardipee's refusal of Officer Hallam's request to search her whole bag, show that her will was not overborne. *Bautista*, 362 F.3d at 589; *see also Berghuis*,

560 U.S. at 375-76, 386-87 (finding statements voluntary after nearly three hours of questioning in an interrogation room).

Guardipee's arguments about the circumstances do not alter that conclusion. While Officer Hallam arrived in an unmarked car and ordered her to get on the ground, (Ex. 504 at 17:33:22-35), that concerns the manner in which the arrest was effected, not pressure to obtain a statement. Guardipee also asserts that the warnings and questioning were rushed, but the pace of the warnings bears on whether she understood her rights, which the Court addresses above. And while Officer Hallam implied that he did not believe her answers, that is insufficient to establish coercion. *Haswood*, 350 F.3d at 1029. The Court concludes Guardipee's statements were voluntary.

**4. The Sixth Amendment is inapplicable.**

Guardipee's Sixth Amendment claim also fails. The right attaches only at the beginning of formal judicial proceedings, meaning a "formal charge, preliminary hearing, indictment, information, or arraignment." *Fellers v. United States*, 540 U.S. 519, 523 (2004) (cleaned up); *see also Norman v. Ducharme*, 871 F.2d 1483, 1486 (9th Cir. 1989). Here, none of those phases of this federal proceeding had yet occurred at the time of arrest, so the Sixth Amendment right to counsel had not yet attached. *United States v. Pace*, 833 F.2d 1307, 1311-12 (9th Cir. 1987). Because the

Sixth Amendment does not apply, and Guardipee's waiver of her rights was knowing and voluntary, her statements are admissible.

### IV. Motion to Dismiss

A motion to dismiss is proper when undisputed facts demonstrate that the government cannot prove an essential element of the charged offense. *See Rojas-Pedroza*, 716 F.3d at 1261. Here the motion to dismiss rises and falls with the motion to suppress. Because the Court denies Guardipee's request to suppress evidence, the Court also denies her motion to dismiss.

### V. Conclusion

Because the stop and arrest were lawful, the search of the bag was a valid search incident to arrest, and Guardipee validly waived her Miranda rights before making voluntary statements, the motion to suppress and the motion to dismiss are **DENIED**. IT IS SO ORDERED.

DATED this 15th day of October, 2026.

Kathleen Lane

KATHLEEN S. LANE
United States District Court Judge